JERALD R. CURETON (JRC 4244)
RICHARD A. HAWS, (RAH 2297)
CURETON CAPLAN, P.C.
3000 Midlantic Avenue
Suite 200
Mt. Laurel, New Jersey 08054
(856) 824-1001
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| RICHARD C. LUCEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.<br><br>Defendant | HONORABLE RENEE M. BUMB<br><br>CIVIL ACTION NO. 06-3738 (RMB) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL ARBITRATION

Richard A. Haws, Esquire
On the Brief

# TABLE OF CONTENTS

I.    SUMMARY ................................................................................................... - 2 -

II.   STATEMENT OF FACTS ............................................................................. - 3 -

    A. BACKGROUND ......................................................................................... - 3 -

    B. PROCEDURAL FACTS RELATED TO ARBITRATION................................. - 8 -

III.  LEGAL ARGUMENT ................................................................................. - 10 -

    A. FXG'S ARBITRATION CLAUSE IS UNCONSCIONABLE AND THEREFORE
       UNENFORCEABLE............................................................................... - 10 -

        *1.  Legal Standards................................................................................ - 10 -*

        *2.  The FXG Arbitration Clause Has Been Adjudicated to be Unconscionable ...... - 11 -*

        *3.  FXG's arbitration clause is procedurally unconscionable. ................................ - 13 -*

        *4.  FXG's arbitration clause is substantively unconscionable because of the limitations
            it imposes on remedies. ...................................................................... - 15 -*

        *5.  The 90-Day time limitation is substantively unconscionable............................ - 17 -*

        *6.  It is substantively unconscionable for FXG to require that the plaintiffs share the
            prohibitive expenses incurred in Arbitration ...................................... - 18 -*

        *7.  FXG's refusal to allow meaningful discovery is substantively unconscionable .- 20 -*

        *8.  It is unconscionable to preclude the issuance of a written opinion. ................... - 22 -*

        *9.  The unconscionable provisions of FXG's arbitration clause are not severable. - 23 -*

    B. PLAINTIFF DAVID MCMAHON IS ENTITLED TO PRESENT HIS CLAIMS IN THIS
       FORUM ............................................................................................ - 24 -

IV.   CONCLUSION........................................................................................... - 27 -

<u>**TABLE OF AUTHORITIES**</u>

## Cases

<u>Alexander v. Anthony Int.'l</u>, 341 F.3d 256 (3d. Cir. 2003) ..................................... 16, 17

<u>Bellevue Drug Co. v. Advance PCS</u>, 333 F.Supp.2d 318 (E.D.Pa. 2004) .................................... 13

<u>Bergquist Co. v. Sunroc Corp.</u>, 777 F.Supp. 1236 (E.D.Pa., 1991) ................................................ 29

<u>Bradford v. Rockwell Semiconductor Sys., Inc.</u>, 238 F.3d 549 (4th Cir. 2001) ........................ 21

<u>Doctor's Assoc., Inc. v. Casarotto</u>, 517 U.S. 681 (1996) ............................................... 14

<u>Domingo v. Ameriquest Mortg. Co.</u>, 70 Fed. Appx. 919 (9th Cir. 2003) ................................. 24

<u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279 (2002) ........................................................ 14

<u>First Fid. Bank v. Rudbart</u>, 506 U.S. 871 (1992) .................................................... 16

<u>Friday v. American Oil Corp.</u>, 2006 WL 897744 (W.D.Pa., 2006) ......................................... 14

<u>Geiger v. Ryan's Family Steak Houses, Inc.</u>, 134 F.Supp.2d 985 (S.D. Ind. 2001) ................... 24

<u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991) ................................................ 23, 24

<u>Giordano v. Pep Boys--Manny, Moe & Jack, Inc.</u>, 2001 WL 484360
   (E.D. Pa. March 29, 2001) .................................................................................... 23

<u>Harold Friedman Inc. v. Thorofare Markets, Inc.</u>, 587 F.2d 127 (3d Cir. 1978) ....................... 13

<u>Huegel v. Mifflin Construction Co.</u>, 796 A.2d 350 (Pa. Super. 2002) ......................................... 16

<u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165 (2003) ............................................... 21

<u>InterDigital Commc'ns. Corp. v. Fed. Ins. Co.</u>, 392 F.Supp.2d 707 (E.D.Pa. 2005) ................... 13

<u>Kaplan v. First Options of Chicago, Inc.</u>, 19 F.3d 1503 (3d Cir. 1994) ...................................... 29

<u>Lelouis v. Western Directory Co.</u>, 230 F.Supp.2d 1214 (D.Or. 2001) ........................................ 21

<u>Lytle v. CitiFinancial Services, Inc.</u>, 810 A.2d 643 (Pa. Super. 2002) ........................................ 16

<u>Markel Intern. Ins. Co. v. Westchester Fire Ins. Co.</u>, 442 F.Supp.2d 200 (D.N.J., 2006) ............ 13

<u>Muhammad v. County Bank of Rehoboth Beach Delaware</u>, 189 N.J. 1 (2006) ......................... 14

<u>Ndanyi v. Rent-A-Center, Inc.</u>, 2004 WL 3254516 ................................................................. 25

<u>Ostroff v. Alterra Healthcare Corp.</u>, 433 F. Supp.2d 538 (E.D.Pa 2006) .............................. 17, 24

<u>Ostroff v. Alterra Healthcare Corp.</u>, 433 F.Supp.2d 538 (E.D.Pa., 2006) ................................. 24

<u>Parilla v. IAP Worldwide Services, VI, Inc.</u>, 368 F.3d 269 (3d Cir. 2004) ..................... 14, 21, 23

<u>Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.</u>, 636 F.2d 51 (3d Cir. 1980) ..................... 13

<u>Roadway Package System, Inc. v. Kayser</u>, 257 F.3d 287 (2001) ................................... 14, 25, 28

<u>Rudbart v. North Jersey Dist. Water Supply Common</u>, 127 N.J. 344 (1992) ............................ 16

<u>Sitogum Holdings, Inc. v. Ropes</u>, 352 N.J.Super. 555 (Ch.Div. 2002) ...................................... 14

<u>Spinetti v. Service Corp. Intern</u>. 324 F.3d 212 (3d Cir. 2003) ................................................ 21

<u>Thibodeau v. Comcast Corp.</u>, 912 A.2d 874 (Pa.Super., 2006) ................................................ 14

<u>United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.</u>, 484 U.S. 29 (1987) ....................... 14

<u>Vasquez v. Glassboro Serv. Ass'n., Inc.</u>, 83 N.J. 86 (1980) ..................................................... 16

<u>W.R. Grace & Co. v. Local Union 759</u>, 461 U.S. 757 (1983) .................................................. 14

<u>Worman v. FXG</u>, 2005 WL 431317 ........................................................................................ 22

## Statutes

Federal Arbitration Act, 9 U.S.C. 1, et seq. ............................................................................. 14

28 U.S.C. §1407 .................................................................................................................... 10

## Rules

<u>AAA Commercial Arbitration Rules</u>, R-21 ............................................................................ 24

Fed.R.Civ.P. 56(c) ................................................................................................................. 13

## I.      SUMMARY

Defendant FedEx Ground Package System, Inc. ("FXG")'s "Motion to Compel

Arbitration of all of the Plaintiffs' claims and to Dismiss Plaintiff David McMahon's Claims"

("FXG's Motion") must be denied because the arbitration clause is unconscionable and therefore

unenforceable. At least three courts have already held this very arbitration clause to be

unconscionable: the United States District Court for Southern California found FXG's arbitration

clause "unconscionable as a matter of law and therefore unenforceable,"[1] and recently two

decisions from Oregon have agreed.[2] FXG's arbitration clause, which is contained in a 30-page

"Standard Contractor Operating Agreement" or "OA" that FXG requires all of its contractor-

drivers to sign, functions as a floodgate to minimize FXG's liability. In this case, FXG would

have this Court require the Plaintiffs to arbitrate their discharge claims, but would then doubtless

contest any such arbitration as being time barred, as the arbitration clause has only the briefest

window to file:  90 days. The clause itself is unconscionable because of the following:

- The clause limits  any potential award to narrowly defined "net damages";

- The clause prohibits any meaningful equitable relief;

- It requires a delivery driver to file for arbitration within 90 days of being fired or to have his claims barred;

- The drivers must hire and pay a lawyer and pay thousands of dollars for arbitration costs and fees (and agree to pay even more later), and to agree to pay thousands more for an arbitrator's services;

---

[1] See, Johnson v. FXG Ground Package System, Inc., Case No. 01CV1795BTM (NLS),  United States District Court-Southern District of California, attached to the Certification of Richard Haws, Esq. in Opposition to Defendant's Motion to Compel Arbitration ("Haws Cert."), Ex. E, at 14.

[2] See, McHenry v. FXG Home Delivery, Case No. 16-06-22287, Oregon State Court, Lane County (April 9, 2007), attached as Haws Cert., Ex. F; and Wieber v. FXG Ground Package System, Inc., Case No 040909259, Oregon State Circuit Court, Multnomah County, (March 3, 2007), attached to Haws Cert., Ex. G.

- FXG conceals the basis for FXG's decision to terminate the driver while its arbitration clause denies access to any meaningful discovery from FXG;  and

- FXG's arbitration clause prohibits the arbitrator from issuing a written opinion.

FXG also asks this Court to dismiss the claim of Plaintiff David McMahon, who had filed for arbitration but was unable to continue to pay the expense. After McMahon sought judicial review of the arbitration clause in this action, his arbitrator granted an unopposed motion to dismiss his claim as time barred (McMahon filed after the 90-day period). However, if the arbitration clause is unconscionable, then the arbitrator's decision is a nullity. Additionally, the arbitrator did not have the benefit of any submissions by McMahon, and decided the matter solely based on FXG's motion, even though she knew that McMahon was seeking judicial review here.

## II.   STATEMENT OF FACTS

### A.  BACKGROUND

FXG, a subsidiary of FedEx Corp., is a multi-billion dollar transportation company that specializes in small package pickup and delivery. It operates in two divisions:  Ground, which focuses on businesses, and Home Delivery, which delivers to residences. Plaintiffs were a few of over 10,000 pickup and delivery drivers in the FXG system nation wide.  Plaintiff McMahon worked out of the FXG Ground terminal in West Deptford, New Jersey.[3] The other plaintiffs all worked out of the FXG Home Delivery terminal in Barrington, New Jersey.  Each of the Plaintiffs was an employee of FXG whose job was to pick-up and deliver packages, which is the essence of FXG's business.[4]  As detailed in the paragraphs that follow, each Plaintiff contracted

---

[3] Declaration of David McMahon in Opposition to Motion to Compel Arbitration ("McMahon Dec.") , ¶4

[4] FXG characterizes the Plaintiffs as "independent contractors" when in fact they are employees. As demonstrated by the decision not to consolidate this civil action into the "MDL" action, this case does not directly concern the employment status of the Plaintiffs, but rather focuses upon their rights under their respective Operating

to be a pickup and delivery driver – in essence, a truck driver-under the terms of the Standard Operating Agreement that FXG requires all of its contractor-drivers to execute.  Each Plaintiff was fired by FXG (or, in FXG-speak, their "OA's were terminated") in violation of the OA.

Plaintiff Richard Lucey first became a driver for FXG on February 7, 2002.[5]  Before becoming a driver for FXG, he was required to obtain a delivery truck that met FXG's standards and to undergo training by FXG.[6] FXG first presented Lucey with the its "operating agreement" on his first day at work.[7]  Lucey's Operating Agreement would have expired on February 7, 2006, but FXG fired Lucey on November 1, 2005 without giving any reason.[8] Lucey had very limited earnings in the 90 days following his termination.[9]

Plaintiff Francis Dennis Lynch first became a driver for FXG on March 3, 2001.[10] Before becoming a driver for FXG, he was required to obtain a delivery truck that met FXG's standards and to undergo training by FXG.[11]  Lynch completed this training in approximately February 2001 but it was not until after FXG trained Lynch and he had purchased his truck that FXG first presented the FXG "operating agreement."[12]  Lynch's terminal manager showed him this document on March 3, 2001 and told Lynch that he had to sign the agreement without any

---

Agreements. Nevertheless, it is important to understand the larger context in which this case exists and the grossly unequal bargaining power of FXG versus the Plaintiffs.

[5] Declaration of Richard C. Lucey in Opposition to Defendants' Motion to Compel Arbitration, ("Lucey Dec."), ¶2

[6] Lucey Dec., ¶ 3-4

[7] Lucey Dec., ¶4

[8] Lucey Dec., ¶5

[9] Lucey Dec., ¶¶7-9

[10] Declaration of Francis Dennis Lynch in Opposition to Defendants' Motion to Compel Arbitration, ("Lynch Dec."), ¶2

[11] Lynch Dec., ¶2

[12] Lynch Dec., ¶2

chance to review it or show it to a lawyer or accountant. Id. Lynch last worked for FXG on April 7, 2005. Lynch had eleven months remaining on his OA.[13]  Lynch had very limited earnings in the 90 days following his termination.[14]

Plaintiff David McMahon also had to sign the OA in order to accept a driver's position with FXG.[15]  Before he could sign an OA, McMahon had to buy a truck. McMahon had his own route for two years, until about 2000, and then became a "swing driver."[16]  McMahon continued in the "swing" position until FXG terminated him on Dec. 28, 2004. McMahon also maintained a second truck for a different route.[17]  At the time of his termination, McMahon had about three months remaining on his OA.

Plaintiff James Hough first signed a contract and became a driver for FXG on February 7, 2002.[18]  Before becoming a driver for FXG, Hough was a temporary driver for FXG in January 2002. Id.  FXG told Hough told that he could get a permanent route but that before he could sign a contract FXG required him to obtain a delivery truck that met FXG's standards. Id.  On February 7, 2002, Hough picked up his new truck and went to the terminal.[19]  He was allowed to sign an OA but was given no chance to review the agreement that he was actually presented with or show it to a lawyer or accountant.[20]  FXG had given Hough a blank contract to look at some

---

[13] Lynch Dec., ¶3

[14] Lynch Dec., ¶3-4

[15] Declaration of David McMahon in Opposition to Defendant's Motion to Compel Arbitration, ("McMahon Dec."), ¶2.

[16] McMahon Dec., ¶3. In the "swing driver" position, McMahon's job was to cover routes when other drivers were absent.

[17] McMahon Dec., ¶4.

[18] Declaration of James Hough in Opposition to Defendants' Motion to Compel Arbitration, ("Hough Dec."), ¶2.

[19] Hough Dec., ¶3.

[20] Hough Dec., ¶4.

time in January and he just assumed that the two were the same.[21]  Hough last worked for FXG on November 24, 2004 and had about two months remaining on his OA.[22]  Hough had very limited —if any— earnings in the 90 days following his termination.[23]

FXG required Plaintiff Frank Cucinotti to obtain a truck before FXG would give him the Operating Agreement.[24]  Cucinotti understood that he had no choice but to sign if he wanted to work for FXG and was already committed to paying for the truck.[25]  FXG fired Cucinotti on February 26, 2005 when he had about a month left on his OA.[26]  Cucinotti had very limited earnings in the 90 days following his termination.[27]

As demonstrated by the February 2, 2007 Order by the Judicial Panel on Multidistrict Litigation vacating its prior conditional transfer of this case, this case does not directly concern the employment status of the Plaintiffs, but rather focuses upon their rights under their respective Operating Agreements.  Nevertheless, it is important to view the larger context in which this case exists and the grossly unequal bargaining power of FXG versus the Plaintiffs.  By way of background, prior to the inception of this civil action on June 6, 2006, Plaintiffs were initially represented by Cureton Caplan, P.C. in connection with (1) a civil class-action regarding their employment status; (2) various proceedings before the National Labor Relations Board regarding (a) a petition seeking to represent a unit of pick-up and delivery contractors at FXG's Barrington,

---

[21] Hough Dec., ¶4.

[22] Hough Dec., ¶5.

[23] Hough Dec., ¶p6-7.

[24] , Declaration of Frank Cucinotti in Opposition to Defendants' Motion to Compel Arbitration, ("Cucinotti Dec."), ¶2.

[25] Cucinotti Dec., ¶3.

[26] Cucinotti Dec., ¶4.

[27] Cucinotti Dec., ¶¶7-8.

New Jersey terminal; and (b) various unfair labor charges; and (3) appeals of denials for unemployment benefits.

With reference to the civil action regarding employment status, Plaintiffs are former FXG drivers and named plaintiffs or potential class members in a lawsuit captioned "In re:  Federal Express Employment Litigation (No. II)," MDL-1700, pending in the Northern District of Illinois. Plaintiffs, Frank Cucinotti, Francis Dennis Lynch, and David McMahon are named plaintiffs in the MDL lawsuit. FXG characterizes the Plaintiffs as "independent contractors" when in fact they are employees. FXG's continued misclassification of its drivers as "independent contractors" is the subject of a set of about 40 class-action lawsuits regarding employment status that since have been consolidated in the Northern District of Indiana (under the Multidistrict Litigation procedures of 28 U.S.C. §1407) under the caption "In re FedEx Ground Package System, Inc., Employment Practices Litigation (No. II)," MDL Docket No. 1700.

In addition to the MDL, Plaintiffs were claimants and participants in hearings before the National Labor Relations Board in Philadelphia with regard to claims that Federal Express terminated them for their attempts to unionize the Barrington FedEx terminal. Both NLRB proceedings have been resolved.

Further, the State of New Jersey has ruled that Plaintiffs David McMahon, Francis Dennis Lynch, Frank Cucinotti, Richard Lucey, and Michael McKenzie are "employees" for purposes of unemployment compensation.

### B.  PROCEDURAL FACTS RELATED TO ARBITRATION

On September 27, 2005 three of the Plaintiffs —McMahon, Lynch, and McKenzie—filed for arbitration under AAA's Employment Arbitration rules.[28]  FXG opposed (and AAA subsequently rejected) this attempt to file under the AAA's Employment Arbitration Rules.[29] Consequently, these three Plaintiffs could not proceed until they filed under AAA's Commercial Arbitration Rules and paid the required fees.[30]

The fees demanded by AAA under its Commercial Arbitration Rules were onerous. Plaintiff David McMahon was obligated to pay a filing fee of $2,750.00.[31]  The range for fees for the arbitrator in the McMahon case was between $150.00 and $475.00 per hour.[32]  Although he agreed to pick the least expensive arbitrator, the bill for arbitration for David McMahon was $4,300.00 before any hearings were conducted.[33]  At the time, McMahon had been fired by FXG and was an unemployed truck driver with mortgage payments and payments due monthly on each of his two trucks.[34]  Like McMahon, Lynch was faced a high initial fee; Lynch's was $1,800.00.[35]  In Lynch's arbitration case, the parties were unable to agree to an arbitrator and AAA then appointed an arbitrator pursuant to its rules from a list of its own choosing, at a hearing rate of $2,750.00 per day and $375.00 per hour study time.[36]  Like McMahon, Lynch

---

[28] Haws Cert., at ¶ 7

[29] Haws Cert., at ¶ 9

[30] Haws Cert., at ¶ 9

[31] Haws Cert., at ¶ 10; McMahon Dec.¶8

[32] Haws Cert., at ¶ 10; McMahon Dec.¶9

[33] Haws Cert., at ¶10; McMahon Dec.¶10

[34] Haws Cert., at ¶10; McMahon Dec.¶11

[35] Haws Cert., at ¶ 12

[36] Haws Cert., at ¶ 12

was unemployed at that time and had two truck payments to make.[37]  AAA required a fee of $4,300.00 from Michael McKenzie before it would process his claim.[38]

Because of the exorbitant cost of arbitration, these three Plaintiffs sought to forego the arbitrations and proceed to a judicial determination of the unconscionability of the arbitration clause.[39]  Because of the costs already incurred and the 90-day statute of limitations imposed by FXG, these Plaintiffs were reluctant to dismiss their arbitrations outright. FXG was fully aware of the decisions to forego further arbitration efforts. On May 8, 2006, Plaintiffs wrote to the AAA and Michael Murphy, FXG's lawyer, to indicate that Lynch, McKenzie, and McMahon had each elected to seek a judicial determination that the arbitration clause was unconscionable:

> "I write to advise that upon further consideration each claimant in the above arbitrations has elected to seek a judicial declaration regarding the validity and scope of the arbitration agreement contained in each of their respective Operating Agreements. I will forward a copy of the complaint to all parties when filed." <u>See</u> Cert. of Rygiel-Boyd, Ex O (filed 3/26/07).

Nonetheless, FXG <u>refused</u> to consent of the stay of the Arbitrations.[40]  On May 10, 2006, AAA wrote that, in the absence of an agreement by the parties and an Order staying this matter, the Association would proceed with the administration under the rules.[41]  On or about May 11, 2006, FXG moved to dismiss McMahon's arbitration as untimely.[42]  Plaintiffs filed the Complaint in this matter in the Superior Court of New Jersey, Burlington County on June 6, 2006.[43]  The

---

[37] Lynch Dec. ¶3

[38] Haws Cert., at ¶12

[39] Haws Cert., at ¶¶14-15.

[40] Haws Cert., at ¶17

[41] Haws Cert., at ¶ 17

[42] Haws Cert., at ¶ 18

[43] Haws Cert., at ¶ 19

arbitrations in McKenzie and Lynch did not go forward, but  for unknown reasons, the arbitrator in McMahon's case declined to stay the arbitration, and (in absence of a brief in opposition to FXG's motion) dismissed McMahon's claim as being untimely, i.e. filed more than 90-days after McMahon was fired.[44]  FXG removed this action on or about August 9, 2006 and filed its answer on August 31, 2006.[45]  On September 6, 2006, FXG filed a Notice of Related Action and Conditional Transfer Order.[46]  On February 8, 2007, the Judicial Panel on Multidistrict Litigation vacated its conditional transfer of this case to the MDL, effectively denying FXG's request to consolidate this matter with the employment-status cases pending in South Bend, Indiana in "*In re* FXG Ground Package System, Inc., Employment Practices Litigation."[47]

## III.   LEGAL ARGUMENT

### A.  FXG'S ARBITRATION CLAUSE IS UNCONSCIONABLE AND THEREFORE UNENFORCEABLE

#### 1.  Legal Standards

Motions to compel arbitration are governed under the well-settled summary judgment standard set forth in Fed.R.Civ.P. 56(c). Markel Intern. Ins. Co. v. Westchester Fire Ins. Co., 442 F.Supp.2d 200, 202 (D.N.J., 2006) (citing InterDigital Commc'ns. Corp. v. Fed. Ins. Co., 392 F.Supp.2d 707, 711 (E.D.Pa. 2005)); see also Bellevue Drug Co. v. Advance PCS, 333 F.Supp.2d 318, 322 (E.D.Pa. 2004). The Third Circuit has held that the district court, when considering a motion to compel arbitration that is opposed on the ground that no enforceable agreement to arbitrate had been made between the parties, "…should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Par-Knit Mills, Inc. v.

---

[44] Haws Cert., at ¶20

[45] Haws Cert., at ¶21

[46] Haws Cert., at ¶ 22

[47] Id.

Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 and fn.9 (3d Cir. 1980)("This standard is quickly recognized as the standard used by district courts in resolving summary judgment motions pursuant to Fed.R.Civ.P. 56(c). Application of that standard to the issue presented herein is appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") (citing Harold Friedman Inc. v. Thorofare Markets, Inc., 587 F.2d 127, 131 (3d Cir. 1978))

The Third Circuit has already determined that FXG's Standard Operating Agreement falls under the Federal Arbitration Act, 9 U.C.S. et seq. Roadway Package System, Inc. v. Kayser, 257 F.3d 287, 291-292,  cert. den. 534 U.S. 1020 (2001) (The FAA "unquestionably" governs the identical arbitration provisions as used by FXG's predecessor, RPS). Notwithstanding the federal policy in favor of arbitration, the FAA merely places contracts requiring arbitration "on equal footing with all other contracts," EEOC v. Waffle House, Inc., 534 U.S. 279, 293 (2002), and so a party seeking to compel arbitration bears the burden of demonstrating that the parties entered into a valid arbitration agreement. Friday v. American Oil Corp., 2006 WL 897744, *1 (W.D.Pa., 2006).

## 2. The FXG Arbitration Clause Has Been Adjudicated to be Unconscionable

Agreements to arbitrate under the FAA are subject to avoidance "upon such grounds as exist at law or in equity for the revocation of any contract." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."); United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 42 (1987); W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am., 461 U.S. 757, 766 (1983). The doctrine of unconscionability as

found in federal and state common law involves both "procedural" and "substantive" elements.[48]

Two of the recent decisions cited above find FXG's arbitration clause suffers from both

procedural and substantive unconscionability.[49]

     As noted at least three courts that have considered the issue have found that FXG's

arbitration clause is unconscionable and therefore unenforceable. In <u>Johnson v. FXG Ground

Package System, Inc</u>., the district court took umbrage at the take-it-or-leave-it nature of FXG's

arbitration clause, as well as the limited discovery, substantial arbitration costs, and the

limitations on damages.[50]  In <u>McHenry v. FXG Home Delivery</u> (April 9, 2007), the Oregon state

court found unconscionability in the 90-day notice period, the limitations on discovery, the

inability of both sides to seek redress in the courts, and in the limitations on written opinions.[51]

In <u>Wieber v. FXG Ground</u>, the Court did not file a detailed opinion with its order, but the Court

did opine, "The arbitration provision at section 12.3 of the FXG Ground Package System, Inc.

Pick –up and Delivery Contractor Operating Agreement is unconscionable and is, therefore,

unenforceable.[52]  While these cases are not binding on this Court, they are nevertheless

instructive because the factors that underlie the three cases also predominate in this action.

---

[48] <u>Parilla v. IAP Worldwide Services, VI, Inc</u>., 368 F.3d 269, 277 (3d Cir. 2004) ("Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions."); <u>Thibodeau v. Comcast Corp.</u>, 912 A.2d 874, 886 (Pa.Super., 2006); <u>Muhammad v. County Bank of Rehoboth Beach Delaware</u>, 189 N.J. 1, 15 (N.J., 2006), cert. den. ___ S.Ct. ___,  2007 WL 120665(2007) (<u>citing</u> <u>Sitogum Holdings, Inc. v. Ropes</u>, 352 N.J.Super. 555, 564-66 (Ch.Div. 2002)).

[49] <u>See</u>, , e.g., <u>Johnson v. FXG Ground Package System, Inc</u>., Haws Cert., Ex., at 12-14; and <u>McHenry v. FXG Home Delivery</u> , Haws Cert., Ex. B , at 9. Only the "order" has been located for the <u>Wieber v. FXG Ground Package System, Inc</u>., case and so the exact basis of that unconscionability determination decision is not clear.

[50] Haws Cert., Ex. E at 13.

[51] Haws Cert., Ex. F.

[52] Haws Cert. Ex. G, ¶2.

### 3.  FXG's arbitration clause is procedurally unconscionable.

Each Plaintiff contracted to be a pick-up and delivery driver —in essence, a truck driver— under the terms of a form Standard Operating Agreement (or "OA") that FXG requires all of its contractor-drivers to execute. The OA, which consists of over thirty-pages of text plus numerous addenda, are substantially the same in all respects relevant to this action. FXG drafted the OA. No aspect of the OA is negotiable. The vague language of the OA and the grossly unequal bargaining power gives FXG unfettered ability to restructure routes, to force drivers to deliver any package FXG demands, and most importantly, to terminate the drivers at will. Plaintiffs therefore argue that FXG's arbitration clause is procedurally unconscionable.

Procedural unconscionability is generally satisfied if the agreement constitutes a contract of adhesion. Alexander, supra 341 F.3d at 265. A contract of adhesion is typified by a "standard form contract prepared by one party, to be signed by the party in the weaker position…who has little choice about the terms." Lytle v. CitiFinancial Services, Inc., 810 A.2d 643, 658 (Pa. Super. 2002) (quoting Huegel v. Mifflin Construction Co., 796 A.2d 350, 357 (Pa. Super. 2002)). A contract of adhesion is defined as "[a] contract where one party . . . must accept or reject the contract [.]" Rudbart v. North Jersey Dist. Water Supply Common, 127 N.J. 344, 353 cert. denied sub nom. First Fid. Bank v. Rudbart, 506 U.S. 871 (1992) (quoting Vasquez v. Glassboro Serv. Ass'n., Inc., 83 N.J. 86, 104 (1980)). The essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars. Thus, in Alexander, the contract was presented to Plaintiffs, equipment operators, by defendant, which conducted business throughout the nation and the world, for signature on a "take-it-or-leave-it basis." Based on these facts, the Third Circuit held that the defendant

> Clearly possessed more bargaining power than two long-time
> equipment operators with limited educational backgrounds and, at

> best, very narrow options for other employment. The acceptance of
> the standard form contract was a condition of employment,
> and…prospective employees may have no realistic ability to
> modify its terms….Because Plaintiffs had no real choice but to
> accept these terms, they have established the existence of
> procedural unconscionability.

Alexander, supra at 266; see also, Ostroff v. Alterra Healthcare Corp., 433 F. Supp.2d 538, 546-

47 (E.D.Pa 2006) (finding "unmistakable procedural unconscionability" where plaintiff was

"forced to sign the 31-page document under pressure and without review by an attorney").

Here the Plaintiffs were each presented with the OA shortly before their jobs were to

start. Most drivers did not have the opportunity to read the agreement before starting. Plaintiffs

were already financially committed to driving for FXG in that they had purchased or leased a

truck, had undergone any needed training, and were in no position economically to walk away

from their new job. Plaintiffs had no opportunity to negotiate any changes to the OA. Indeed, the

OA had been drafted by FXG years before and had been used —and continues to be used— by

FXG with each of its over 10,000 driver-contractors. The OA was presented as a "take it or leave

it" proposition.[53]

The contrast in bargaining power between the Plaintiffs and FXG is striking. According

to its website, FedEx Home Delivery operates a network of more than 29 ground hubs and 500

distribution hubs and local terminals throughout the United States and Canada. In 2006, FXG

posted $5.3 billion in revenue and delivered 727,825,000 packages. FXG has a workforce of

more than 60,000 employees and "independent contractors" who deliver an average daily

volume of more than 3 million packages daily throughout the United States, Canada, and Puerto

Rico. The FXG fleet consists of approximately 19,000 motorized vehicles. FXG's parent

company boasts annual revenues of $33 billion and more than 275,000 employees and

---

[53] Declaration of Richard Lucey at ¶¶2-5; Declaration of David McMahon at ¶2; Declaration of James Hough at
¶2; Declaration of Frank Cucinotti at ¶3; and Declaration of Dennis Lynch at ¶¶2-4.

contractors. In contrast, Plaintiffs are individual truck drivers who lack the legal sophistication, business acumen, and access to legal resources of FXG. The inequity in bargaining power is further underscored by the fact that no experience is necessary to become a P&D contractor, as the job only requires that the candidate must be 21 or older; pass a Department of Transportation physical and drug scan and have a satisfactory driving record. (See, www.fedex.com).

### 4. FXG's arbitration clause is substantively unconscionable because of the limitations it imposes on remedies.

#### a) Damages

The arbitration clause severely limits the amount and types of damages that an arbitrator may award a successful driver in arbitration is entitled only to an award of the "net earnings" from the date of termination to the last day of the term of the OA (without any renewals), and "shall have no claim for damages in any other amount, and the arbitrator shall have no power to award punitive or any other damages."

FXG excludes from damages the value of the driver's route, i.e., the "ownership" of these purported "independent contractor's" routes. FXG only allows the award of "net" damages, ignoring the fact that the drivers still have to pay for their vehicles and insurance after they are fired. The devastating effect of FXG's arbitration clause on the availability of damages is clear when the amount of damages available in each forum is compared:

| *Plaintiff* | *Actual Damages*[54] | *Arbitration Damages* | *Arbitration Penalty* |
|---|---|---|---|
| Richard Lucey | $104,000 | $9,600 | 91% |
| Dennis Lynch | $173,800 | $27,940 | 84% |
| David McMahon | $238,250 | $19,500 | 92% |
| Mike McKenzie | $230,000 | $44,650 | 81% |
| Frank Cucinotti | $103,500 | $3,333 | 97% |

---

[54] To avoid an unnecessary disputes, the "actual damages" here are ball-parked from FXG's own Notice of Removal, where FXG estimated actual damages each Plaintiff may have suffered. These damages do not include punitive or other damages, interests, costs and fees, to which the driver are entitled by law.

| James Hough | $ 99,400 | $5,600 | 94% |
|---|---|---|---|

Moreover, the "arbitration damages" column is artificially high because it does not deduct for the expense of one-half of the arbitration costs and arbitration fees that would have been incurred, which, in the McMahon case, exceeded $4,300 before even one day of hearings were held.

The Third Circuit held that a similar arbitration agreement was unconscionable because it "substantially limited the relief available to Plaintiffs." Alexander v. Anthony Int.'l, 341 F.3d 256, 267 (3d. Cir. 2003). Like here, the agreement in Alexander limited a successful plaintiff's damages to narrowly defined net pecuniary damages. Like here, the parties were also required to bear their own costs and expenses, including attorney's fees. The Third Circuit wrote that these restrictions were

> one-sided in the extreme and unreasonably favorable to [defendant]. They prevent an employee from recovering not only his or her attorney's fees but also such potentially significant relief as punitive damages. An employee therefore is not entitled to complete compensation for any harm done and the company is able to evade full responsibility for its actions. Id.

The FXG arbitration clause, although similar to the Alexander provision, is actually more onerous in that FXG does not have to reinstate a driver even if the arbitrator orders it to. Given the Alexander decision, these restrictions are substantively unconscionable.

> b)      No Equitable Relief or Reinstatement

Even if ordered to do so by the arbitrator, FXG need not reinstate a contractor. FXG's arbitration clause states that if the arbitrator reinstates a driver "then, at the option of [FXG]: (1) the contractor shall be reinstated… or (2) contractor shall nevertheless be terminated…." The inability to require FXG to reinstate a driver means that FXG can strip a driver's proprietary interest in his route. It is significant that if FXG terminates a driver, the driver cannot sell his route. The arbitrator cannot award the value of the route to the driver, nor can the arbitrator

ensure that FXG will reinstate the driver to his position. The net result is that the driver who contemplates arbitration must weigh the paltry amount he may recover versus the thousands of dollars he knows he must pay for the arbitration. But, even if a driver did have valid legal grounds to seek injunctive or other equitable relief, he or she would be barred from seeking redress from the courts by the very terms of the OA.

### 5.   The 90-Day time limitation is substantively unconscionable

FXG's arbitration clause provides that a driver must make a demand for arbitration within "90 days of the occurrence of the claimed wrongful termination," and that failure to do so "…shall constitute an absolute bar to the institution of any proceedings and waiver of the claimed wrongful termination." Such a provision is unconscionable: the time provided is insufficient to bring a well-supported claim, the time limit prevents an employee from invoking continuing violation and tolling doctrines, and the OA does not subject FXG to any similar period.

The unreasonableness of this 90-day period is more apparent when viewed in tandem with FXG's refusal to provide any information to the driver and the high cost of initialing arbitration under AAA's Commercial Arbitration Rules. It is imperative to understand the position that FXG puts its terminated drivers in: an unemployed driver must retain counsel and pay thousands of dollars in arbitration fees and costs, while continuing to pay for his leased or mortgaged vehicle and insurance coverage on the vehicle, all within weeks of being summarily fired.

Further, as pointed out by the <u>McHenry</u> decision, the OA does not limit FXG's pursuit of its claims against a driver. The <u>Alexander</u> Court found that the unfairness was "compounded" by the fact that the company was not required to provide the employee with any of its own claims

within the 30-day time period. 341 F.3d at 267.[55] Likewise, the FXG agreement does not allow for tolling. See, e.g., Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1175, cert. den. 540 U.S. 1160(2004) (9th Cir. 2003) (striking down one-year limitations period because it deprived the plaintiff of the continuing violation doctrine). In Alexander, the Third Circuit held that that a thirty-day limitations period was "clearly unreasonable and favorable to [the employer]….In addition to providing an apparently insufficient time to bring a well-supported claim, such an obligation prevents an employee from invoking the continuing violation and tolling doctrines." Id. at 266-67; see, also, Parilla, 368 F.3d at 289 (also finding a thirty-day notice provision substantively unreasonable). The determination is fact specific and even a one year can be too short under certain facts. Lelouis v. Western Directory Co., 230 F.Supp.2d 1214, 1221-1222 (D.Or. 2001) (finding that one-year limitation period coupled with uneven bargaining positions rendered such time limitation unconscionable). While a 90-day window may appear benign on its face, in application here its effect would be to effectively allow FXG to avoid financial responsibility for any damages it might have cause to the Plaintiffs.

### 6. It is substantively unconscionable for FXG to require that the plaintiffs share the prohibitive expenses incurred in Arbitration

The expense of AAA Commercial Arbitration is prohibitive in this context and therefore unconscionable. In Spinetti v. Service Corp. Intern. 324 F.3d 212 (3d Cir. 2003), the Third Circuit found that an employee met her burden of showing that the fees under AAA's Commercial Arbitration Rules were unconscionable. Those same Rules are at issue here, and the net effect of these fees is to deter the Plaintiffs from seeking redress. As noted in one case cited by the Third Circuit in Spinetti, an appropriate inquiry is one that focuses on the claimant's

---

[55] In Alexander, the Third Circuit held that that a thirty-day limitations period was "clearly unreasonable and favorable to [the employer]….In addition to providing an apparently insufficient time to bring a well-supported claim, such an obligation prevents an employee from invoking the continuing violation and tolling doctrines." Id. at 266-67; see, also, Parilla, 368 F.3d at 289 (also finding a thirty-day notice provision substantively unreasonable).

ability to pay the arbitration fees and costs and whether these are substantial enough to deter the bringing of claims. <u>Bradford v. Rockwell Semiconductor Sys., Inc.</u>, 238 F.3d 549, 556 (4th Cir. 2001). In <u>Spinetti</u> the plaintiff was required to pay an initial, non-refundable filing fee of $500 to the American Arbitration Association, an additional filing fee of $2,750, a case-filing fee of $1,000, an additional charge of $150 for each day of the hearing, and half the cost of an arbitrator. The evidence disclosed that a mid-range arbitrator in Western Pennsylvania charges approximately $250 an hour with a $2,000-per-day minimum.

Here the fees were similar. AAA invoiced David McMahon over $4,300 before any hearings had even occurred. Lynch's fees would have been similarly high. The AAA Fees do not include any expenses for hearings, or arbitrators or other legal fees or costs.  Here the facts show that none of the Plaintiffs could afford to pay the fees mandated by the Commercial Arbitration Rules of the AAA [56]  To the extent that it bears citation, these facts constitute one of the many reasons why this case is distinguishable from the facts in <u>Worman v. FXG</u>, 2005 WL 431317, where the Pennsylvania Court of Common Pleas, Lehigh County ruled that a FXG driver failed to demonstrate that the arbitration clause in his employment contact was invalid. The fees were subjectively too high for these drivers to pay. Objectively the fees alone took out a large portion of any possible recovery a plaintiff might obtain.[57]

---

[56] <u>See,</u> Declaration of Richard Lucey at ¶9; Declaration of David McMahon at ¶11; Declaration of James Hough at ¶8; Declaration of Frank Cucinotti at ¶7; and Declaration of Dennis Lynch at ¶4.

[57] The maximum award is the average net settlement multiplied by the number of months remaining. Calculated as a percentage of the value of the claim, these amounts are patently outrageous:

| *Name* | *Maximum Award* | *AAA Fees[57]* | *Percentage of Award for Fees* |
|---|---|---|---|
| Richard Lucey | $9,600 | $2,550 | 26.5% |
| Dennis Lynch | $27,940 | $4,000 | 14% |
| David McMahon | $19,500 | $4,000 | 21% |
| M. McKenzie | $44,650 | $4,000 | 9% |
| Frank Cucinotti | $3,333 | $2,550 | 77% |

While FXG may argue that arbitration clause provides that the arbitrator *may* apportion the arbitration fees and expenses between the parties,

> With respect to an employee who is unable to pay the costs of arbitration we see little difference between a 100% probability that the employee will have to pay half the arbitrator's fees and expenses on the one hand, and an indeterminate [but less than 100%] probability that the employee would have to pay all of the arbitrator's fees and expenses on the other. In either case, the employee must consider whether arbitral will be so prohibitively expensive for her that she cannot take advantage of the arbitral forum. Simply the prospect that the employee may have to pay the entire amount of the arbitrator's fees and expenses may serve to chill her willingness to bring a claim.

Parilla, 368 F.3d at 284; (see also, Giordano v. Pep Boys--Manny, Moe & Jack, Inc., 2001 WL 484360 (E.D. Pa. March 29, 2001) (finding that arbitration costs in the thousands of dollars would deter plaintiff's vindication of his claims; thus the cost-sharing provisions of the arbitration agreement were unenforceable).

### 7. FXG's refusal to allow meaningful discovery is substantively unconscionable

Another substantively unconscionable provision of FXG's arbitration clause states, "Neither party shall be entitled to written or deposition discovery from the other, except with respect to damages." Each Plaintiff here received the same one sentence form letter terminating his OA. Because of FXG's policy of providing only a one-sentence termination letter, this provision effectively withholds all information about the reasons for any termination from the claimant. FXG refuses to reveal any meaningful information to its former drivers about why it terminated them.

Courts have generally found less draconian discovery limitations substantively unconscionable if the limited discovery is insufficient to provide the plaintiff with a fair

| James Hough | $5,600 | $2,550 | 46% |

opportunity to present its claims. In <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20

(1991), the Supreme Court held that, while not every limitation on discovery would necessarily

render an arbitration provision invalid, a showing that the limited discovery was insufficient to

provide the plaintiff with a fair opportunity to present its claims could lead to the opposite result.

500 U.S. at 31.

      In <u>Ostroff v. Alterra Healthcare Corp</u>., 433 F.Supp.2d 538 (E.D.Pa., 2006), reconsid.

den., 2006 WL 2086970 (E.D.Pa. Jul 25, 2006) (NO. Civ. A05-6187), the district court found a

bar on depositions of fact witnesses in a nursing home's residency agreement substantively

unconscionable because the plaintiff there "would have a much more difficult time proving

numerous allegations in the Complaint" without the fact witness depositions. <u>Id</u>. at 545 -546.

Other courts have likewise found arbitration clauses substantively unconscionable in part

because of limitations on discovery. <u>See</u>, <u>e.g.</u>, <u>Domingo v. Ameriquest Mortg. Co.</u>, 70 Fed.

Appx. 919, 920 (9th Cir. 2003) (arbitration provision voided in part because of limits on

discovery); and <u>Geiger v. Ryan's Family Steak Houses, Inc</u>., 134 F.Supp.2d 985, 996 (S.D. Ind.

2001) (arbitration provision voided in part because discovery only allowed one deposition as of

right).

      Here, the discovery provisions are more restrictive than the provisions in <u>Gilmer</u>, which

allowed for document production, information requests, depositions, and subpoenas, and in

<u>Ostroff</u>, which allowed depositions of expert witnesses. The discovery provision here is even

more restrictive than the AAA Commercial Arbitration Rules that FXG imposes, which rules

mandate the production of documents and other information, the identification of any witnesses

to be called, and the exchange copies of exhibits, and which rule authorizes the arbitrator to

resolve any disputes concerning the exchange of information. <u>AAA Commercial Arbitration Rules</u>, R-21 (Exchange of Information)[58]

Moreover, FXG's express provisions obviate the usual AAA rule that would leave the discovery issue to the arbitrators. <u>See</u>,  <u>Ndanyi v. Rent-A-Center, Inc.</u>, 2004 WL 3254516 at 4 (E.D. La. Dec. 11, 2004) (arbitration provision not unconscionable where arbitrator allowed to expand discovery) The discovery limitation is yet another example of FXG's practice of taking away with one hand what it offers with the other: having required a driver to file under AAA's more complex and expensive Commercial Arbitration Rules, FXG simultaneously eviscerates the AAA Commercial Arbitration Rule that which requires the exchange of information before arbitration.

**8.   It is unconscionable to preclude the issuance of a written opinion.**

FXG does not allow its arbitrators to issue written decisions: "(6) The arbitrator shall provide the parties with only a written determination of the outcome of the arbitration, without accompanying opinion…." Of course without a written opinion, the ability to bring a lawsuit "to confirm, enforce, vacate, modify, or correct the award of the arbitrator as provided by law" as allowed elsewhere in the Operating Agreement is meaningless. Moreover, if an arbitrator does overstep his bounds and write an opinion that attacks the fairness of the arbitration agreement (or finds the driver to be an employee), FXG has a history of running to Court to complain. <u>See, e.g.</u>, <u>Roadway Package System, Inc. v. Kayser</u>, 257 F.3d at 300 (Affirming a district court decision to set aside and arbitration decisions because "[b]y grounding his decision on such considerations

---

[58] The Rule states: "Exchange of Information (a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct i) the production of documents and other information, and ii) the identification of any witnesses to be called. (b) At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. (c) The arbitrator is authorized to resolve any disputes concerning the exchange of information." R.21

of fairness …, the arbitrator overstepped the bounds of the authority granted to him by the Agreement."

### 9. The unconscionable provisions of FXG's arbitration clause are not severable.

Plaintiffs anticipate that FXG may argue that even if the Court finds that there are some unconscionable provisions in their Arbitration Agreement that the Court could sever these offensive parts and leave the valid provisions. Severance is improper here because the "cumulative effect" of the unconscionable provisions "permeate the agreement ... and thoroughly taint [the] central purpose of requiring the arbitration of employment disputes." Alexander at 271.    Here, the arbitration agreement severely limits Plaintiffs' damages by restricting the employee's relief to reinstatement and net damages and specifically excludes punitive damages. In addition, it contains 1) a ninety-day notice provision; 2) a requirement that the plaintiff pay his or her own attorneys fees and costs; a 3) the potential for cost-splitting of arbitration fees; 4) a substantial restriction on discovery; 5) and a lack of mutuality of remedies by allowing FXG and not the Plaintiffs to obtain injunctive relief. Alexander notes that the plaintiffs "were given no real choice but to accept arbitration," and that

> In addition to facing a burdensome requirement to pay the arbitrator's fees and costs if unsuccessful, an employee must comply with an unreasonable time limitation, lose any right to attorney's fees, and give up the chance to receive any relief beyond either reinstatement or "net" pecuniary damages.

Alexander, 341 F.3d at 271(citations omitted).

The objectionable provisions here are integral to the overall arbitration clause, and the sheer number of onerous provisions supports the Plaintiffs assertions that this arbitration clause is actually about reducing damages and not selecting a dispute resolution forum.

### B.  PLAINTIFF DAVID MCMAHON IS ENTITLED TO PRESENT HIS CLAIMS IN THIS FORUM

FXG asks this Court to affirm an arbitrator's decision dismissing McMahon's AAA arbitration as untimely.[59]  But FXG — by refusing to allow the claims to be stayed — is in no position to seek that relief. FXG was fully aware of McMahon's attempt to forego further arbitration efforts and elected to go ahead knowing that McMahon objected. Lynch's arbitrator faced with this scenario simply took no action.[60] That this is so is demonstrated by the chronology of events.

- On May 8, 2006, Counsel for Plaintiffs wrote to the AAA and Michael Murphy, FXG's lawyer, to indicate that Lynch, McKenzie, and Mahon had each elected to seek a judicial determination that FXG's arbitration clause was unconscionable: "I write to advise that upon further consideration each claimant in the above arbitrations has elected to seek a judicial declaration regarding the validity and scope of the arbitration agreement contained in each of their respective Operating Agreements. I will forward a copy of the complaint to all parties when filed." See Cert. of Rygiel-Boyd, Ex O (filed 3/26/07).

- On May 9, 2006, FXG refused to consent of the stay of the Arbitrations. See Cert. of Rygiel-Boyd, Ex. "P"

- On May 10, 2006, AAA wrote that in the absence of an agreement by the parties and an Order staying this matter, the association would proceed with the administration under the rules. See Cert. of Rygiel-Boyd, Ex Q (filed 3/26/07).

- On or about May 11, 2006, FXG filed a Motion to Dismiss as of timely McMahon's arbitration filing. Haws Cert. ¶18

- On June 6, 2006, Plaintiffs filed the complaint in this matter in the Superior Court of New Jersey, Burlington County on June 6, 2006. Haws Cert. ¶19.

---

[59] Ironically, by rendering such a decision, the arbitrator was in direct violation of the Operating Agreement, which, at Addendum 7 ¶6, states, "The arbitrator shall provide the parties with only a written determination of the outcome of the arbitration, without accompanying opinion…."

[60] Haws Cert., ¶18

- FXG removed this action on or about August 9, 2006, and FXG did not file an Answer in this action until August 31, 2006.

- On September 6, 2006, FXG filed a Notice of Related Action and Conditional Transfer Order, effectively staying this case.

- On February 8, 2007, the Judicial Panel on Multidistrict Litigation vacated its conditional transfer of this case to the MDL, effectively denying FXG's request to consolidate this matter with the other cases pending in South Bend, Indiana.

Thus, McMahon's position is factually similar to outlined in the McHenry case. Haws Cert. Ex. F. In that case, FXG fired McHenry in June of 2005. Four months later, he filed for arbitration under his OA. Then, a year and a half after he was fired, McHenry filed his lawsuit challenging the validity and enforceability of the arbitration clause. The McHenry court found that there was no waiver of the right to challenge the arbitration clause in court. Like in the recent McHenry case, where arbitration had been filed 18 months before the court action, it is not relevant that arbitration had been sought.

Additionally the cases that FXG cite appeal to the wrong body of arbitration law in that, by relying exclusively on Pennsylvania common-law arbitration cases, see, FXG's Brief at 8 FN 5, and at 11 FN 6, FXG ignores binding Third Circuit precedent holding that federal —not Pennsylvania — substantive law "unquestionably" governs the arbitration provisions of FXG's Operating Agreements. Roadway Package System, Inc. v. Kayser, supra, 257 F.3d at 291-292.

As noted, this body of law identifies unconscionability as a basis to refuse to enforce an arbitration clause. The facts of McMahon's termination demonstrate why requiring arbitration within 90 days is unconscionable. McMahon started working for FXG in March of 1998 at its West Deptford terminal. [61] Three days after Christmas 2004, FXG terminated him without any

_____

[61] McMahon Dec., ¶4

- 25 -

prior notice, just a few weeks after he helped form a union. [62] FXG precluded McMahon from retrieving his own trucks on the day of his termination and physically escorted him from the terminal. [63] After his termination, he was still obligated to make payments on two FXG trucks that he owned and was "severely in debt." [64] McMahon was unable to collect unemployment initially because FXG opposed his application, arguing he was an independent contractor and not an employee. [65] McMahon received no income in the crucial 90-day window after FXG fired him. McMahon initially filed for arbitration, but he abandoned arbitration due to the expense. At the time of the arbitrator's decision, the invoice was in excess of $4,300, and no hearing or any type of discovery had occurred. [66]

Truly, after filing his demand, McMahon's participation in the arbitration was limited to objecting to it.[67] McMahon was merely "going through the motions" until he was "able to formulate and act upon a plan to prevent the arbitration entirely." Bergquist Co. v. Sunroc Corp., 777 F.Supp. 1236, 1251 (E.D.Pa., 1991) (Participation in the "initial phases of the arbitration process" does not "vitiate [an] objection []" to that arbitration.) A party does not have to try to enjoin or stay an arbitration proceeding in order to preserve its objection to jurisdiction. Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1510 (3d Cir. 1994) (citations omitted), aff'd 514 U.S. 938 (1995)  FXG and the arbitrator had notice of  the objections to the arbitration and cannot be said to have suffered any  cognizable prejudice not of their own making in going

---

[62] McMahon Dec., ¶5

[63] McMahon Dec., ¶4

[64] McMahon Dec., ¶5

[65] McMahon Dec., ¶6

[66] McMahon Dec., ¶10

[67] Alternative Systems, Inc. v. Carey 67 Cal.App. 4th 1034, 1041, 79 Cal.Rptr.2d 567, 571 (Cal.App. 1 Dist., 1998) (In the end, non-moving party "…did not participate at all except to object.").

forward in the face of a known objection to arbitration. Neither McMahon nor any of the other

plaintiffs should be bound by FXG's arbitration clause because it is unconscionable, as

demonstrated above. Thus, the arbitrator's dismissal of McMahon's claim on a procedural basis

is a nullity. Without jurisdiction, the arbitrator's decision carries no weight.


**IV.    CONCLUSION**

For the foregoing reasons, the plaintiffs respectfully request the Court to deny FXG's

motion to compel arbitration and to dismiss Plaintiff McMahon's claims.



Respectfully submitted,

**CURETON CAPLAN, P.C.**

*/s/ Richard A. Haws*

Dated:  April 27, 2007              By: _____

RICHARD A. HAWS, ESQUIRE
Attorney for Plaintiffs

Q:\JRC\FEDEX-LUCE\Motions\To compel arbitration\Brief in Oppositition To Arbitration 042707.doc