<u>NOT FOR PUBLICATION</u>                               [Doc. No. 18]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
                                    :
RICHARD LUCEY, et al.,              :
                                    :
              Plaintiffs,           :
                                    :   Civil No. 06-3738 (RMB)
       v.                           :
                                    :
FEDEX GROUND PACKAGE SYSTEMS,       :   OPINION
INC.,                               :
                                    :
              Defendant.            :
                                    :
```

Appearances:

      Richard A. Haws
      Cureton Caplan, PC
      300 Midlantic Dr.
      Suite 200
      Mt. Laurel, NJ 08054
          Attorney for Plaintiffs, Richard Lucey, Francis Dennis
          Lynch, David McMahon, James Hough, Michael McKenzie,
          and Frank Cucinotti.

      Jennifer A. Rygiel-Boyd
      Ogletree Deakins Nask Smoak & Stewart
      10 Madison Avenue
      Suite 402
      Morristown, NJ 07960
          Attorney for Defendant, FedEx Ground Package Systems,
          Inc.

**BUMB,** United States District Judge:

      This matter comes before the Court on a motion to compel

arbitration, brought by Defendant FedEx Ground Package Systems,

1

Inc. ("FedEx").  Plaintiffs are former FedEx delivery truck drivers who have brought suit alleging that FedEx terminated them in breach of their contracts with FedEx.

FedEx now seeks an Order compelling Plaintiffs to submit their claims to arbitration in compliance with the arbitration provision in their contracts.  Plaintiffs, however, argue that the arbitration provision is unconscionable and, therefore, unenforceable.  Because this Court finds the arbitration provision both procedurally and substantively unconscionable, Defendant's motion is denied.

## I.   Statement of Facts

### A)   General Background of Lawsuit

Defendant FedEx Ground Package Systems, Inc. ("FedEx") is a licensed motor carrier engaged in the interstate pickup, transportation and delivery of small packages.  (Def. Motion at 2).  FedEx Ground has two operating divisions: FedEx Ground and FedEx Home Delivery.  (Id. at 2-3).

Plaintiffs Richard Lucey, Francis Dennis Lynch, Michael McKenzie, Frank Cucinotti, James Hough and David McMahon worked as pick-up and delivery truck drivers for FedEx[1] during the

_____

[1]    Lucey, Lynch, McKenzie, Cucinotti and Hough worked for the FedEx Home Delivery terminal in Barrington, New Jersey; McMahon worked for the FedEx Ground terminal in West Deptford, New Jersey.  (Def. Motion at 2; Pl. Resp. at 3).  McMahon initially contracted with Roadway Package Systems, which was

following terms:

          Lucey      February 7, 2002 through November 1, 2005
          Lynch      March 3, 2001 through April 7, 2005
          McMahon    March 16, 1998 through December 28, 2004
          Hough      February 7, 2002 through November 24, 2004
          McKenzie   May 17, 2000 through August 16, 2005
          Cucinotti  April 2, 2003 through February 26, 2005

(Def. Motion at 3-5; Pl. Resp. at 4-6).  Each Plaintiff was hired

pursuant to the terms of an Operating Agreement ("OA"), which

FedEx requires all of its contractor-drivers[2] to execute.  (Def.

Motion at 3; Pl. Resp. at 3-4).  Before entering into the OA,

each potential driver was required to obtain a personal lease on

a truck that met FedEx's standards, demonstrate financial

resources sufficient to maintain the lease, and attend

informational meetings and training sessions.  (Pl. Resp. at 4-6;

see also Hough Decl. at ¶ 4; Lucey Decl. at ¶ 4; Cucinotti Decl.

at ¶ 3; Lynch Decl. at ¶ 2; McMahon Decl. at ¶ 2).

        FedEx terminated the Plaintiffs on the respective dates

listed above for various reasons (which are not at issue in the

_____

later acquired by FedEx.  While the contract provisions in his
contract are numbered differently from the others', the language
and substance of McMahon's contract is the same as the other
Plaintiffs' contracts.

        [2]While Defendant characterizes the drivers as independent
contractors, Plaintiffs argue that the drivers are in fact
employees.  (Def. motion at 3; Pl. Resp. at 3, n. 4).  This issue
is the subject of a consolidated class action in the Northern
District of Indiana entitled, In re FedEx Ground Package System,
Inc., Employment Practices Litigation (No. II), MDL Docket No.
1700.  (Pl. Resp. at 7), and is not material to the issues in
dispute in this motion.

present motion).  (Def. Motion at 3-5).  Plaintiffs claim they
were terminated in violation of the OA; FedEx counters that
Plaintiffs breached the OA, thereby warranting termination.

Pursuant to the language of the OA, any termination
disagreement arising under the OA is to be settled by
arbitration.  (Def. Motion at 4; OA § 9.3).  The parties dispute
the enforceability of this arbitration provision.  FedEx argues
it is enforceable.  Plaintiffs argue that the OA is procedurally
unfair and its terms unconscionable.

Specifically, Plaintiffs claim that they were presented with
the OA only shortly before their jobs were to start and, thus,
did not have an opportunity to read it, review it with a lawyer,
or negotiate any changes to it before signing it.  (Pl. Resp. at
14; see also Hough Decl. at ¶ 4; Lucey Decl. at ¶ 4; Cucinotti
Decl. at ¶ 3; Lynch Decl. at ¶ 2).  Plaintiffs further claim that
by time they were presented with the OA, they were already
financially committed to driving for FedEx in that they had
purchased or leased a truck, had undergone the necessary
training, and were in no position economically to walk away from
the new job.  (Pl. Resp. at 14).  In addition, Plaintiffs allege
that the substantive terms of the arbitration provision itself
are also unconscionable.  (Id. at 15-23).

Defendant does not dispute that Plaintiffs were first given
a copy of the OA after they had taken the steps described above.

Nonetheless, Defendant contends, Plaintiffs were aware of the OA prior to that point because Plaintiffs had attended informational meetings where the job and OA were explained to them and Plaintiffs had been given subsequent opportunities to meet with FedEx management and ask questions. (Def. Reply at 8). Moreover, Defendant argues that the terms of the arbitration provision itself are reasonable and fair.

### B)   Procedural Background

On September 27, 2005, three of the plaintiffs, McMahon, Lynch and McKenzie,[3] filed for arbitration under the American Arbitration Association's ("AAA") Employment Arbitration rules. (Pl. Resp. at 8). This filing was opposed by FedEx and ultimately rejected by the AAA, thereby forcing these plaintiffs to refile under the AAA's Commercial Arbitration Rules and pay the required fees if they wished to continue resolution of the dispute. (Id.).

Plaintiffs McMahon, Lynch and McKenzie contend that the cost of the commercial arbitration was too onerous for them to bear, particularly in light of their recent termination by FedEx.

---

[3] The other three plaintiffs, Lucey, Cucinotti and Hough, did not seek to arbitrate for financial reasons as set forth in their declarations. (Certification of Richard Haws ("Haws Cert.") (Dkt. No. 36) at ¶ 8). Their first claim against FedEx concerning the OA was the complaint filed in New Jersey State Court, June 6, 2006, subsequently removed to this Court.

(Id.).  As examples, Plaintiff McMahon was obligated to pay an initial filing fee of $2,750 as well as an additional $4,300 for arbitration before any hearings were conducted; Plaintiff Lynch faced an initial fee of $1,800, plus the cost of an arbitrator at a hearing rate of $2,750 per day and a study rate of $375 per hour.  (Id.).  Overwhelmed by these costs, these Plaintiffs sought to forego the arbitration and instead pursue a judicial determination concerning the validity of the arbitration provision in the OA.  (Id. at 9).

Notwithstanding this decision, these three Plaintiffs did not dismiss the arbitration outright because of the costs they had already incurred and the 90-day statute of limitations imposed by the arbitration provision.  (Id.).  On May 8, 2006, Plaintiffs McMahon, Lynch and McKenzie wrote a letter to the AAA and FedEx indicating that they had elected to seek a judicial determination that the arbitration clause was unconscionable. (Id.).  FedEx refused to consent to a stay of the arbitration and on May 10, 2006, the AAA wrote that, in the absence of an agreement by the parties and an Order staying the matter, the arbitration would proceed.  (Id. at 10).  On or about May 11, 2006, FedEx moved to dismiss McMahon's arbitration as untimely (i.e., filed more than 90 days after McMahon's termination). (Id.).  In the absence of a brief in opposition, the AAA dismissed McMahon's claim on June 9, 2006.  (Def. Motion at 6).

6

McKenzie and Lynch requested a stay of their arbitrations on June 13, 2006 and, though opposed by FedEx, these arbitrations did not go forward.  (Id.).

Plaintiffs filed the complaint in this matter in the Superior Court of New Jersey, Burlington County on June 6, 2006, seeking 1) declaratory judgment that the arbitration provision of the OA is unenforceable, and 2) compensatory, punitive and consequential damages for FedEx's breach of the OA and the duty of good faith and fair dealing.[4]  (Id. at 9).  FedEx removed the action to this Court on August 9, 2006, filed its answer on August 31, 2006, and filed a Notice of Related Action and Conditional Transfer Order on September 6, 2006.  (Id. at 10). The Judicial Panel on Multidistrict Litigation denied transfer of this case on February 13, 2007.  (Id.).  On March 26, 2007, FedEx filed this motion to compel arbitration of the claims by Plaintiffs Lucey, Lynch, McKenzie, Cucinotti, and Hough, and confirm the arbitration award issued on Plaintiff McMahon's claim, thereby dismissing his claims in this litigation.  (Def. Motion at 7).

## II.  Standard of Review

Motions to compel arbitration are reviewed under the

---

[4]Additionally, Plaintiffs McMahon and McKenzie make a claim based on interference with prospective economic advantage.

standard for summary judgment found in Fed. R. Civ. P. 56(c).

Markel Int'l Ins. Co. v. Westchester Fire Ins. Co., 442 F. Supp.

2d 200, 202 (D.N.J. 2006) (citing InterDigital Comm. Corp. v.

Fed. Ins. Co., 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005)).

Summary judgment shall be granted if there is no genuine issue as

to any material fact and the moving party is entitled to a

judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also

Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A

dispute is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the non-moving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is

"material" only if it might affect the outcome of the suit under

the applicable rule of law.  Id.  Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment.

Id.  "In making this determination, a court must make all

reasonable inferences in favor of the non-movant."  Oscar Mayer

Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990)

(citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d

Cir. 1983)).  "At the summary judgment stage the judge's function

is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for

trial."  Anderson, 477 U.S. at 249.

8

## III. Analysis

Pursuant to Section 16 of the OA, the Court will apply Pennsylvania law.[5]

The arbitration provision of the OA states:

> <u>Arbitration of Asserted Wrongful Termination</u>.  In the event FHD [FedEx] acts to terminate this Agreement (which acts shall include any claim by Contractor of constructive termination) and Contractor disagrees with such termination or asserts that the actions of FHD are not authorized under the terms of this Agreement, then each such disagreement (but no others) <u>shall be settled by arbitration</u> in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) in accordance with the terms and conditions set forth in Addendum 7 to this Agreement.

(OA at § 9.3) (emphasis added).

---

[5]  Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination. <u>Hammersmith v. TIG Ins. Co.</u>, 480 F.3d 220, 226 (3d Cir. 2007) (<u>citing</u> <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941)). Under New Jersey law, courts will uphold a choice of law provision in a contract so long as it is not in violation of the public policy of the state.  <u>Kalman Floor Co. v. Jos. L. Muscarelle, Inc.</u>, 481 A.2d 553, 555 (N.J. Super. Ct. App. Div. 1984) (<u>citing</u>, <u>Crinnion v. The Great Atlantic & Pacific Tea Co.</u>, 384 A.2d 159 (N.J. Super. Ct. App. Div. 1978); <u>Knollmeyer v. Rudco Indus., Inc.</u>, 381 A.2d 378 (N.J. Super. Ct. App. Div. 1977); <u>Restat. 2d of Conflict of Laws</u>, § 187 at 561 (1971)). Similarly, under Pennsylvania law, when parties to a contract have agreed to a choice of law clause, that provision will generally be given effect.  <u>Smith v. Cmmw. Nat'l Bank</u>, 557 A.2d 775, 777 (Pa. Super. Ct. 1998) (<u>citing</u> <u>Aluminum Co. of Am. v. Essex Group, Inc.</u>, 499 F. Supp. 53, 59 (W.D. Pa. 1980); <u>Admiral Corp. v. Cerullo Elec. Supply Co.</u>, 32 F.R.D. 379, 381 (M.D. Pa. 1961); <u>Restat. 2d of Conflict of Laws</u> § 187; <u>Int'l Paper Co. v. Midvale-Heppenstall Co.</u>, 63 D. & C.2d 627 (1973)).  Section 16 of the OA states that Pennsylvania law governs the agreement.  (OA at § 16).  Since neither party argues that application of Pennsylvania law would offend the public policy of New Jersey, this Court will apply Pennsylvania law.

9

The Federal Arbitration Act ("FAA") was enacted "to reverse the longstanding judicial hostility to arbitration agreements...and to place arbitration agreements upon the same footing as other contracts."  Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 89 (2000) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). Pennsylvania encourages the use of arbitration to resolve disputes as a matter of public policy.  Carll v. Terminix Int'l Co., L.P., 793 A.2d 921, 924 (Pa. Super. Ct. 2002); see also Lytle v. CitiFinancial Svcs., Inc., 810 A.2d 643, 654 (Pa. Super. Ct. 2002) ("when the parties agree to arbitration in a clear and unmistakable manner, then every reasonable effort will be made to favor such agreements") (citing Emmaus Mun. Auth. v. Eltz, 204 A.2d 926, 927 (Pa. 1964)).  Thus, a written arbitration agreement shall be upheld unless it can be found to be invalid "upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract."  42 Pa. Cons. Stat. § 7303 (2007).

Under Pennsylvania law, an arbitration provision is unenforceable if it is both procedurally and substantively unconscionable.  Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 542 (E.D. Pa. 2006) (citing Harris v. Green Tree Financial Corp., 183 F.3d 173, 181 (3d. Cir. 1999)); Bellevue Drug Co. v. Advance PCS, 333 F. Supp. 2d 318, 332 (E.D. Pa.

2004)).  Procedural unconscionability is defined as "'the absence of a meaningful choice on the part of one of the parties.'" Ostroff, 433 F. Supp. at 543 (quoting Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981)).  Substantive unconscionability is present when "the terms of an arbitration provision 'unreasonably favor' the party with the greater bargaining power." Id.

Plaintiffs contend that the arbitration clause of the OA is both procedurally and substantively unconscionable.  (Pl. Resp. at 10).  Defendants argue the opposite.  The burden of proof lies with the Plaintiffs, the party challenging the arbitration provision as unconscionable. See, e.g., Harris v. Green Tree Financial Corp., 183 F.3d 173, 181 (3d Cir. 1999); Bullick v. Sterling Inc., 2004 WL 2381544 at *6 (E.D. Pa. Oct. 21, 2004).[6]

A)   Procedural Unconscionability

Plaintiff makes several arguments to demonstrate the procedural unconscionability of the OA.  First, Plaintiff

---

[6]Although the determination of whether an agreement is unconscionable or not is "ultimately a question of law, ...the necessary inquiry is often fact sensitive." Salley v. Option One Mortg. Corp., 925 A.2d 115, 124 (Pa. 2007).  Where there are factual disputes that "go to not only the arbitration agreement but also to the underlying merits of the parties' larger dispute," those disputes should first be resolved by an arbitrator. Id. (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 338 U.S. 395, 404 (1967)).  In this case, because the Court finds Defendant's evidence insufficient to raise a question of material fact, the Court may properly decide this motion.

contends that the OA constitutes a "contract of adhesion" – a "standard form contract prepared by one party, to be signed by the party in the weaker position...who has little choice about the terms." (Pl. Resp. at 13 (quoting Lytle, 810 A.2d at 658)). While this may be true, under Pennsylvania law, contracts of adhesion are not automatically deemed procedurally unconscionable.  Lytle, 810 A.2d at 658.  Similarly, Plaintiffs' second argument emphasizing the contrast in bargaining power between the parties is not dispositive with respect to procedural unconscionability.  Witmer, 434 A.2d at 1228 (disparate bargaining power does not in and of itself constitute procedural unconscionability); see also Stebok v. Am. Gen. Life & Accident Ins. Co., 715 F. Supp. 711, 714 (W.D. Pa. 1989) (finding of procedural unconscionability is not automatic where one party would not have entered into a contract but for financial necessity).  Rather, a contract is deemed procedurally unconscionable where one of the parties lacked a meaningful choice in entering the agreement.  Ostroff, 433 F. Supp. 2d at 543.  Thus, the Court will focus on Plaintiffs' argument that they lacked a meaningful choice in signing the OA.

In their declarations, Plaintiffs testified that they were presented with the OA only shortly before their jobs were to start and, thus, did not have an opportunity to read it, review it with a lawyer, or negotiate any changes to it before signing

12

it.  (Hough Decl. at ¶ 4; Lucey Decl. at ¶ 4; Cucinotti Decl. at
¶ 3; Lynch Decl. at ¶ 2; <u>see also</u> Pl. Resp. at 14).  Moreover,
Plaintiffs claim that by time they were presented with the OA,
they had already purchased their delivery trucks, attended
training sessions, and financially committed themselves to work
for FedEx.  (<u>Id.</u>).

Though Defendant does not dispute when Plaintiffs were
actually presented with the OA to sign, Defendant claims that
Plaintiffs had previously learned about the OA at informational
meetings and were also given the opportunity to ask questions.
(Def. Reply at 8).  In support of this assertion, Defendant
points to the deposition of Plaintiff Lynch ("Lynch Dep." (Ex. A
to Rygiel-Boyd Reply Certification (Dkt. No. 38))) and the
Certification of Michael Cline, the Senior Manager of
International Compliance for FedEx ("Cline Cert." (Dkt. No. 40)).
(Def. Reply at 8).  However, neither piece of evidence supports
Defendant's argument.

In his deposition, Lynch testified that he attended an
informational meeting in Cherry Hill, where he watched a video
that "was like an overall guide on how your day was, how FedEx
expected the operation to run, the guidelines and the overview of
how you delivered your boxes." (Lynch Dep. at 46:13-15, 47:8-
12).  Besides the video, Lynch stated that "there was a handout,
they gave us FedEx's entrepreneurial spirit like handout, it was

all mimeographed." (Id. at 56:22-25).   Lynch further testified

that he filled out paperwork for a criminal background check and

then left the meeting.  (Id. at 60:20-21).   At no point in his

deposition did Lynch say that he saw or even heard about the OA

during this informational meeting.  To the contrary, Lynch stated

in his declaration, "[i]t was not until after I was trained by

FedEx and had purchased my truck that I was first presented with

the FedEx 'operating agreement.'" (Lynch Decl. at ¶ 2).   Thus,

Lynch's deposition does nothing more than confirm that an

informational meeting was held; it does nothing to support the

notion that Lynch was actually informed of the OA during the

informational meeting.

    Defendant also relies on the Cline certification to support

its argument that Plaintiffs were aware of the OA well before

signing it.  Cline stated that FedEx held informational meetings

to "explain to individuals interested in contracting with FedEx

Ground the nature of the business opportunity, the independent

contractor relationship, the terms of the Operating Agreement..."

(Cline Cert. at ¶ 8).  He further testified that "[d]uring this

meeting or at any time, the independent contractor candidate was

able to ask questions regarding the Operating Agreement" as well

as "request to review the sample Operating Agreement." (Id. at

¶¶ 10-11).  However, despite Cline's testimony as to FedEx's

general hiring practices, Cline offers no evidence to show that

these specific Plaintiffs were actually informed of the OA during
the informational meetings they attended.  Nor does Cline explain
how any of the Plaintiffs could have taken advantage of the
opportunity to ask questions about the OA when they were not even
aware of the OA in the first instance.

The dearth of evidence in support of Defendant's position is
persuasive to this Court.  A self-serving certification by a
high-level FedEx manager who had no contact with Plaintiffs
cannot overcome the evidence that Plaintiffs offer in their
declarations.  See, e.g., Blair v. Scott Specialty Gases, 283
F.3d 595, 608 (3d Cir. 2002) ("[a]n affidavit that is essentially
conclusory and lacking in specific facts is inadequate to satisfy
the movant [or non-movant]'s burden") (citing Maldonado v.
Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) (internal quotations
omitted)).

Given the lack of evidence to the contrary, this Court finds
that Plaintiffs were not made aware of the OA until they were
required to sign it.  At that point in time, Plaintiffs had
already leased or purchased trucks as required by FedEx,
undergone training, and financially committed themselves to
working for FedEx.  Plaintiffs had to sign the OA without an
opportunity to read it thoroughly, review it with a lawyer, or
negotiate any changes to it.  These circumstances constitute an
absence of meaningful choice.  Witmer, 434 A.2d at 1228.

15

Accordingly, this Court finds that the arbitration provision is procedurally unconscionable.

**B)    Substantive Unconscionability**

An arbitration provision is substantively unconscionable when it unreasonably favors the party with greater bargaining power, see, e.g., Ostroff, 433 F. Supp. 2d at 542, or when it is against public policy:

> "The phrase 'public policy' has been used in a general sense to mean that in certain egregious circumstances a contract will be declared void if it is 'so obviously for or against the public health, safety, morals or welfare that there is virtual unanimity in regard to it, that a court may constitute itself the voice of the community.'"

Carll v. Terminix Int'l Co., L.P., 793 A.2d 921, 924 (Pa. Super. 2002) (quoting Jeffrey v. Erie Ins. Exch., 621 A.2d 635, 640 (Pa. Super. Ct. 1993) (quoting Mamlin v. Genoe, 17 A.2d 407, 409 (Pa. 1941))).

Plaintiffs argue that the arbitration provision is substantively unconscionable because it: 1) limits the damages recoverable by contractors; 2) requires contractors to make demand for arbitration within 90 days of termination; 3) imposes significant arbitration expenses on contractors; 4) unreasonably limits discovery; and 5) prohibits the arbitrator from issuing a

16

written opinion.[7]  (Pl. Resp. at 2-3).  The Court will address
each of these arguments in turn below.

### 1)   Limitation on Damages

The arbitration provision limits the claims contractors can
make and the damages the arbitrator can grant as follows:

> If the arbitrator concludes the termination was not
> within the terms of this Agreement, then, at the option
> of FHD: (1) the Contractor shall be reinstated within a
> reasonable period of time...and in that event shall be
> entitled to <u>damages equal to the arbitrator's
> determination of what Contractor's net earnings</u> (after
> payment of all expenses which are borne by Contractor
> pursuant to this Agreement) would have been during the
> period between the date of termination and the date of
> reinstatement; or (2) Contractor shall nevertheless be
> terminated, and, in that event, shall be entitled to
> damages equal to [same as in (1)].  <u>Contractor shall
> have no claim for damages in any other amount, and the
> arbitrator shall have no power to award punitive or any
> other damages</u>.

(OA, Addendum 7, ¶ 5) (emphasis added).  Furthermore, the OA
provides that

> ...the arbitrator may not enter any award which alters,
> amends or modifies the terms or conditions of this
> Agreement in any form or manner.

<u>Id.</u> at ¶ 6.

This type of limited relief has been held unconscionable by

---

[7] The OA also reserves for FedEx alone the right to seek
relief from the courts to protect their property.  (OA, Addendum
7, ¶ 4).  Under Pennsylvania law, an arbitration provision in a
commercial contract of adhesion that reserves the right to seek
judicial relief for the drafting party alone can be found
unconscionable if there is no reasonable business interest being
protected.  <u>See</u> <u>Salley</u>, 925 A.2d 115 at 128.  Plaintiffs did not
raise this argument in their response and the Court will not
address it here.

the Third Circuit.  In <u>Alexander v. Anthony Intern., L.P.</u>, 341
F.3d 256 (3d. Cir. 2003), the arbitration provision in the
employment agreement limited an employee's relief to
"[r]einstatement and narrowly defined 'pecuniary damages'" and
required parties to "bear their own costs and expenses, including
attorney's fees."  <u>Id.</u> at 267.  The Court found these limitations
unconscionable, explaining,

> [t]hese restrictions are one-sided in the extreme and
> unreasonably favorable to [defendant].  They prevent an
> employee from recovering not only his or her attorney's
> fees but also such potentially significant relief as
> punitive damages.  An employee therefore is not
> entitled to complete compensation for any harm done and
> the company is able to evade full responsibility for
> its actions.

<u>Id.</u>  Recognizing that the denial of attorney's fees "helps
[defendant], the party with a substantially stronger bargaining
position and more resources, to the disadvantage of an employee
needing to obtain legal assistance," the Court held these
restrictions substantively unconscionable.  <u>Id.</u> at 267-68.

     This Court finds the reasoning in <u>Alexander</u> convincing and
highly applicable to the present case.  Just as in <u>Alexander</u>, the
arbitration provision in this case limits Plaintiffs' damages to
reinstatement (at the discretion of FedEx, no less) and the net
earnings remaining under the OA.  (OA, Addendum 7, ¶ 5).  Thus,
Plaintiffs are prohibited from claiming (and the arbitrator is
prohibited from awarding) any punitive damages, consequential
damages, attorney's fees, or other damages.  (<u>Id.</u>).  While

18

parties are free to contract for the remedies of their choosing, the Court cannot ignore the circumstances in which these remedies were "chosen" – i.e., FedEx drafted the OA with these restrictions and presented it to Plaintiffs on a "take-it or leave-it" basis.  Nor can the Court ignore the parties' overall disparity in bargaining power.  The reasoning in <u>Alexander</u> and the facts of this situation point to the same conclusion:  the provision of the OA limiting damages to reinstatement and remaining net earnings is unconscionable.

### 2)   90-Day Statute of Limitations

The statute of limitations provision of the OA states that a contractor

> must mail written notice of a demand for arbitration to FedEx and to the AAA by certified mail <u>within 90 days</u> of the occurrence of the claimed wrongful termination. Failure to mail written notice...shall constitute an absolute bar to the institution of any proceedings and a waiver of the claimed wrongful termination.

(OA, Addendum 7, ¶ 1) (emphasis added).  Plaintiffs argue that the 90-day limit on filing an arbitration claim is unconscionable because it does not afford contractors enough time to bring a well-supported claim, prevents an employee from invoking continuing violation and tolling doctrines, and does not apply mutually to FedEx.  (Pl. Resp. at 17).  This Court agrees.

While the parties to a contract can agree to shorten the period in which claims may be raised as long as such agreements are reasonable, <u>see, e.g.</u>, <u>McElhiney v. Allstate Ins. Co.</u>, 33 F.

Supp. 2d 405, 406 (E.D. Pa. 1999) (citing Marshall v. Aetna Cas. & Sur. Co., 643 F.2d 151, 152 (3d Cir. 1981)), the parties in this case did not negotiate such a provision.  Rather, FedEx, the sole drafter of this contract of adhesion, developed a system advantageous to itself by including a non-mutual statute of limitations.  Thus, FedEx can file a claim against a contractor at any time under the general Pennsylvania statute of limitations, but contractors must file their claims against FedEx within 90 days of termination.

A similar limitation was held unconscionable by the Third Circuit in Alexander, 341 F.3d at 266-67.  The Court ruled that the 30-day statute of limitations in the arbitration provision was substantively unconscionable because the time limit was only applicable to the employees and was therefore "clearly unreasonable and favorable to the [employer,]" the drafting party.  Id. at 266.  Although the Alexander court considered the issue under Virgin Island law, the reasoning is equally applicable here.  In the context of a contract of adhesion, it is unfair to impose a 90-day limitation on Plaintiffs while FedEx is under no limit whatsoever.

Furthermore, this Court believes that, based upon the facts in this case, 90 days may not be sufficient time for Plaintiffs to gather enough facts to build a well-supported claim, especially in the aftermath of losing their jobs.  The difficulty

is only compounded by Defendant's practice of not providing any explanation of the reasons for termination (discussed <u>infra</u>). (Pl. Resp. at 20); <u>see</u> <u>Alexander</u>, 341 F.3d at 267.

Given all the other unconscionable factors present in the arbitration agreement, the Court finds the statute of limitations provision substantively unconscionable.

### 3)   Arbitration Expenses

The expense clause of the arbitration provision states as follows:

> The arbitrator shall have the authority only to conclude whether the termination of Contractor was within the terms of this Agreement, to determine damages if required to do so under this subparagraph, and to provide for the <u>division of the AAA fees and AAA assessed expenses of the arbitration between the parties</u>; provided, however, each party shall bear the cost of attorneys, expert witnesses, or other expenses incurred by that party, and the arbitrator shall have no authority to allocate or apportion such costs.

(OA, Addendum 7, ¶ 5) (emphasis added).

Plaintiffs claim that the expense provision of the OA is unconscionable because the cost of arbitration by the AAA is prohibitively high and, thus, serves to deter Plaintiffs from seeking redress. (Pl. Resp. at 18-19). Moreover, Plaintiffs argue, the arbitration fees are excessive in comparison to the limited damages available under the OA and would consume a large portion of any possible recovery they might obtain. (<u>Id.</u> at 19).

21

Defendants respond that the expense provision is not unconscionable because it allows the arbitrator to apportion the costs between the parties as s/he sees fit, which may not necessarily be a 50/50 split between the parties. (Def. Reply at 13-14). Furthermore, Defendants argue, in contrast to other cases where the arbitration fees far exceeded the amounts the plaintiffs were seeking, here, the cost of arbitration is not unreasonable given the damages figures Plaintiffs actually demanded in arbitration. (Id. at 13).

Pennsylvania courts favor arbitration as a means of saving the public court system time and money. See Lytle, 810 A.2d at 667-8. However, that policy is defeated when an arbitration provision "triggers costs effectively depriving a plaintiff of limited pecuniary means of [sic] a forum for vindicating claims." Id. at 667. An arbitration provision is considered unconscionable "if the costs associated with arbitration of a single claim would operate to preclude a claimant from pursuing a remedy." McNulty v. H&R Block Inc., 843 A.2d 1267, 1273 (Pa. Super. Ct. 2004) (citing Lytle, 810 A.2d at 667-68 (holding arbitration provision requiring plaintiff to pay $2,000 in fees before proceedings started unconscionable)). The Third Circuit has come to the same conclusion. Parilla v. IAP Worldwide Svcs., VI, Inc., 368 F.3d 269, 284 (3d Cir. 2004) ("[e]ssentially, we have held that an arbitration provision that makes the arbitral

22

forum prohibitively expensive for a weaker party is
unconscionable") (citing <u>Alexander</u>, 341 F.3d at 269-70); <u>see also</u>
<u>Blair</u>, 283 F.3d at 605 (noting that "the Supreme Court
acknowledged that 'the existence of large arbitration costs could
preclude a litigant...from effectively vindicating her federal
statutory rights in the arbitral forum'") (quoting <u>Green Tree</u>,
531 U.S. at 81).

In <u>Green Tree</u>, the United State Supreme Court held that
where "a party seeks to invalidate an arbitration agreement on
the ground that arbitration would be prohibitively expensive,
that party bears the burden of showing the likelihood of
incurring such costs." 531 U.S. at 92. The inquiry is

> a case-by-case analysis that focuses, among other
> things, upon the claimant's ability to pay the
> arbitration fees and costs, the expected cost
> differential between arbitration and litigation in
> court, and whether that cost differential is so
> substantial as to deter the bringing of claims.

<u>Bradford v. Rockwell Semiconductor Systems, Inc.</u>, 238 F.3d 549,
556 (4th Cir. 2001); <u>see also</u> <u>Blair</u>, 283 F.3d at 610 (applying
case-specific analysis and allowing plaintiff limited factual
discovery to show her inability to pay arbitration costs);
<u>Parilla</u>, 368 F.3d at 284 (same).

The presence of a fee-splitting provision does not change
the inquiry – the court must consider the factual circumstances
of the particular case. <u>See</u> <u>Blair</u>, 283 F.3d at 610 (mere

existence of a fee-splitting provision in an agreement does not satisfy claimant's burden); Goodman v. ESPE America, Inc., 2001 WL 64749, at *4-5 (E.D. Pa. Jan. 19, 2001) (rejecting per se rule that fee-splitting is unenforceable); Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 217 (3d Cir. 2003) (approving district court's application of "the 'case-by-case' teachings of Green Tree on how to decide if a cost-splitting provision in an arbitration agreement denies potential litigants the opportunity to vindicate their statutory rights"). This is so because an opportunity for the apportionment of fees by an arbitrator does not counter the preclusive effect of high arbitration fees. In Parilla, the Third Circuit explained,

> [w]ith respect to an employee who is unable to pay the costs of arbitration, we see little difference between a 100% probability that the employee will have to pay half the arbitrator's fees and expenses on the one hand, and an indeterminate (but less than 100%) probability that the employee would have to pay all of the arbitrator's fees and expenses on the other. In either case, the employee must consider whether arbitration will be so prohibitively expensive for her that she cannot take advantage of the arbitral forum. Simply the prospect that the employee may have to pay the entire amount of the arbitrator's fees and expenses may serve to chill her willingness to bring a claim.

Parilla, 368 F.3d at 284.

Accordingly, in this case, where the arbitrator may apportion the fees as s/he deems appropriate, the Court must consider the cost of arbitration and the financial situations of

24

the Plaintiffs to determine whether the arbitration fees are truly prohibitive.  Nonetheless, the Court may look to previous decisions for guidance in its analysis.

In Spinetti, the plaintiff-former employee who wished to bring an arbitration claim was required to pay an initial filing fee of $500 to the AAA, an additional filing fee of $2,750, a case-filing fee of $1,000, an additional charge of $150/day for the hearing, and half the cost of an arbitrator.  Spinetti, 324 F.3d at 217.  The average rate for an arbitrator in Western Pennsylvania was approximately $250 an hour with a $2,000 per day minimum.  Id.  The plaintiff had been unemployed for 6 months following termination by the defendant-employer and had been taking out cash advances on her credit card to cover her expenses.  Id.  Based on these facts, the district court found (and the Third Circuit agreed) that arbitration was prohibitively expensive for the plaintiff.  Id.

In this case, the evidence shows that the cost of arbitration for Plaintiff McMahon reached $6,000 before arbitration proceedings had even begun – a filing fee of $2,700 plus an invoice for arbitrator and other fees of $4,300. (McMahon Decl. at ¶ 10).  Plaintiff Lynch faced an initial fee of $1,800, plus the cost of an arbitrator at a hearing rate of $2,750 per day and a study rate of $375 per hour.  (Pl. Resp. at 8).  There is no reason to believe the costs would have been

25

significantly less for the other Plaintiffs, had they initiated arbitration claims.

An examination of Plaintiffs' financial circumstances reveals that they could not afford to pay thousands of dollars to arbitrate their claims.  McMahon testified that, "[t]here was no way that [he] could pay these fees.  [He] had a family to support and was severely in debt because of being fired by FedEx." (McMahon Decl. at ¶ 11).  The other four Plaintiffs similarly testified about their inability to afford these costs, pointing in part to the "very limited earnings" they received in the 90 days following termination by FedEx.  (Pl. Resp. at 4-6). Indeed, Lucey, Cucinotti and Hough testified that they did not even seek to arbitrate specifically because they could not afford the fees.  (Lucey Decl. at ¶9; Cucinotti Decl. at ¶ 7; Hough Decl. at ¶ 8; <u>see also</u> Haws Cert. at ¶ 8).

Besides suffering the financial distress of losing their income, Plaintiffs were also saddled with the considerable debt of their truck leases and the loss of their routes.  According to Plaintiffs' estimates, their total damages (including back pay, expenses, and loss of route) actually range from $103,500 to over $200,000.  (Cucinotti Decl. at ¶ 9; Lucey Decl. at ¶ 6; Lynch Decl. at ¶ 5;  McMahon Decl. at ¶ 14).  Given these debt levels, during the three months following termination, Plaintiffs were in no position to spend what little (if any) income they had from

26

unemployment or other means on arbitration fees.   (Lucey Decl. at ¶¶  7-9; McMahon Decl. at ¶ 11; Hough Decl. at ¶¶ 6-8; Lynch Decl. at ¶ 4; Cucinotti Decl. at ¶¶ 6-7).

Moreover, similar to the situation in <u>Lytle</u>, even if Plaintiffs were to prevail in arbitration, the cost of arbitration would swallow a significant portion of any recovery they could receive under the limited damages provision of the OA. (Pl. Resp. at 19).  Most notably, Plaintiff Cucinotti would forfeit 77 percent of his recovery to pay arbitration fees. (<u>Id.</u>).

Looking at the evidence provided, this Court finds that the cost of arbitration in this case is prohibitively expensive. Coupled with the severe limitations on damages and discovery (discussed <u>infra</u>) present in the arbitration provision, it is understandable that Plaintiffs would be hesitant to risk losing thousands of dollars to initiate a proceeding that may or may not prove mildly successful.  This chilling effect on Plaintiffs' ability to vindicate their rights renders the OA expense provision unconscionable.

### 4)   Limitation on Discovery

The discovery limitation in the arbitration agreement states:

> Neither party shall be entitled to written or
> deposition discovery from the other, except with

27

respect to damages.

(OA, Addendum 7, ¶ 3).  Plaintiffs argue that the ban on discovery is substantively unconscionable because it severely inhibits their ability to pursue their claims against FedEx through the arbitration process.  (Pl. Resp. at 20).  FedEx counters that the discovery limitation is consistent with Pennsylvania law.  (Def. Reply at 14 (citing 42 Pa. Cons. Stat. § 7342)).

Discovery procedures in common law arbitration are the same as those in statutory arbitration:

> Witnesses, subpoenas, oaths and depositions
> (a) GENERAL RULE.-- The arbitrators may issue subpoenas in the form prescribed by general rules for the attendance of witnesses and for the production of books, records, documents and other evidence. Subpoenas so issued shall be served and, upon application to the court by a party or by the arbitrators, shall be enforced in the manner provided or prescribed by law for the service and enforcement of subpoenas in a civil action.
> (b) DEPOSITIONS.-- On application of a party and for use as evidence the arbitrators, in the manner and upon the terms designated by them, may permit a deposition to be taken of a witness who cannot be served with a subpoena or who is unable to attend the hearing.

42 Pa. Cons. Stat. § 7309 (2007).  It is difficult to understand how the OA's ban on written and deposition discovery is, as Defendant claims, "consistent" with Pennsylvania law, which clearly allows arbitrators to administer such discovery.

28

Not only is the OA discovery limitation at odds with the statutory language above, it is also in contradiction with the case law on point.  While limitations on discovery do not necessarily render an arbitration provision invalid, the limitations must not be so restrictive such that the allowed discovery "will prove insufficient to allow [Plaintiffs] a fair opportunity to present their claims." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991).  For example, in Ostroff, 433 F. Supp. 2d at 545, the court held that an arbitration provision limiting discovery to the deposition of expert witnesses (permissible under Pennsylvania civil procedure) was unconscionable because it prevented the plaintiff from gathering the information she would need to argue her claim.

Here, the arbitration provision is even more restrictive than that in Ostroff.  Plaintiffs have little to no information to support their claims – they all received the same one-sentence form letter informing them of their termination.  (Pl. Resp. at 20).  FedEx holds all of the information Plaintiffs need to prove their cases and has, through the agreement it drafted, denied Plaintiffs access to that critical information.  Given the lack of information in Plaintiffs' possession, the OA's limitation virtually eliminating discovery is unconscionable.

### 5)   No Written Opinions

The provision of the OA that prevents the arbitrator from

issuing a written opinion states:

> The arbitrator shall provide the parties with only a
> written determination of the outcome of the
> arbitration, without accompanying opinion...

(OA, Addendum 7, ¶ 6).  Plaintiffs contend that this provision is
unconscionable because it renders any attempt to appeal the
arbitrator's decision meaningless.  (Pl. Resp. at 22-23).
Defendants argue that the provision affects both parties equally
and is therefore not unconscionable.  (Def. Reply at 15).

In Gilmer, the United States Supreme Court addressed the
fairness of the rules of the New York Stock Exchange, which did
not require arbitrators to produce written opinions.  Gilmer, 500
U.S. at 31.  The Court held that the rules were not
unconscionable because they required arbitration awards to be in
writing and contain the names of the parties, a summary of the
issues in controversy, and a description of the award issued.
Id. at 31-32.  Unlike the rules in Gilmer, the provision in this
case requires "only a written determination of the outcome" and
actually prohibits any written opinion.  (OA, Addendum 7, ¶ 6).
While arbitrators are not obligated to give their reasoning in
writing, the Court can see no good reason to forbid such an
explanation and suspects that this is merely FedEx's attempt to
maintain spin control.

Furthermore, there is no doubt a reviewing court would find

30

useful an explanation of the arbitrator's decision.  <u>See, e.g.,</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 704-705 (3d Cir. 1981) (in the administrative decision context, "[c]hief among [the reasons for a written opinion] is the need for the appellate court to perform its statutory function of judicial review"); <u>see also</u> <u>Roadway</u> <u>Package System, Inc. v. Kayser</u>, 257 F.3d 287, 301 (3d Cir. 2001) (arbitrators writing no supporting opinions "would be undesirable, for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement") (quoting <u>United Steelworks of Am. v.</u> <u>Enterprise Wheel & Car Corp.</u>, 363 U.S. 593, 598 (1960) (internal quotations omitted)).  Thus, prohibiting an arbitrator from rendering an opinion runs counter to the tenets of judicial efficiency.

For the foregoing reasons, the provision limiting the arbitrator's ability to issue a written opinion is substantively unconscionable.

**IV.  CONCLUSION**

This Court finds that the arbitration provision in the OA both procedurally and substantively unconscionable.  The FedEx hiring procedure denied Plaintiffs a meaningful choice in accepting the arbitration provision of the OA and the specifics

31

of the arbitration provision unreasonably favor FedEx, the party
with greater bargaining power, to the Plaintiffs' disadvantage.
Accordingly, this Court holds the arbitration provision
unconscionable and, therefore, unenforceable.  Because the
arbitration provision is unenforceable, this Court denies
confirmation of the arbitration award issued on McMahon's claims
and denies dismissal of his claims in this suit.  Defendants'
motion to compel arbitration is DENIED.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Date: October 18, 2007